# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# AT NASHVILLE

| | |
|---|---|
| UNITED STATES | ) |
| | ) |
| v. | ) Case NO. 3:19-cr-00315 |
| | ) |
| RODREGUS ROPER | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the United States' motion for the detention of defendant Rodregus Roper pending trial on a single indicted charge of unlawful possession of a firearm by a previously convicted felon. A detention hearing was held on March 11, 2001. Following the close of evidence presented by both parties, the Court inquired of the parties about the legal effect for purposes of the detention analysis of the expunction of certain convictions relied upon by the government. Both parties requested an opportunity to brief that issue and to address any other issues regarding the question of pretrial detention. Post-hearing briefing is now closed. *See* Docket Nos. 31, 34, 35 and 39.

The Court has reviewed the parties' post-hearing filings and this matter is now ready for disposition. For the reasons discussed below, the Court finds the government has not demonstrated by clear and convincing evidence that there are not conditions of release that can reasonably assure the safety of the community. Nor has the government carried its burden of demonstrating by a preponderance of the evidence that there are not conditions of release that can reasonably assure Roper's appearance in court as required. Roper shall therefore be released on April 6, 2021 on the conditions of release detailed in the release order entered separately.

This order shall be STAYED through 4:00 p.m. on April 5, 2021 to allow for the United States to file any motion for review under 18 U.S.C. § 3145 **and** obtain a further stay from the District Judge.[1] Otherwise, Roper shall be released on April 6, 2021, as directed below and in the release order entered separately.

**Background**

On December 18, 2019, Roper was indicted by a grand jury with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 924(g)(1) and 924. (Docket No. 1.) The government filed a motion for detention. (Docket No. 6.) Due to his ongoing state prison sentence for a probation violation, Roper initially waived his right to an immediate hearing on the government's detention motion, reserving his right to later seek release by motion. *See* November 3, 2020 Order at Docket No. 11. On January 19, 2021, Roper moved for a detention hearing and to set conditions of release. (Docket No. 19.) After the Court instructed counsel to confer and attempt to reach an agreement about Roper's possible release (*see* Docket No. 21), they notified the Court of their inability to do so (*see* Docket No. 22), and the Court set a detention hearing.

During the detention hearing, the government presented testimony of Detective Richard Ford with the Metro Nashville Police Department, who testified generally to Roper's criminal history and the specific circumstances of the incident underlying the indictment. The government also presented numerous exhibits consisting of incident reports of Roper's prior arrests and an

---

[1] To be clear, the stay of this order shall expire at 4:00 p.m. on April 5, 2021. If by that date and time, the government has not appealed this order or has appealed but has not obtained a further stay by the District Judge, Roper shall be released on April 6, 2021, after processing.

email from Roper's state probation officer regarding his compliance with conditions of probation. One of the arrest reports is stamped "Expunged – For Police Use Only."

Roper presented the testimony of his mother, Mary Roper Smith, who testified about Roper's community and family ties and his personal characteristics generally. Ms. Smith also stated her willingness to be a third-party custodian for Roper. Also testifying was Michael Street. Mr. Street owns his own electrical contracting business and testified that he has previously employed Roper, who is a certified electrician journeyman, and will ensure that Roper has a job if released. Mr. Street also testified that he is a member of the Essential Labor Council of Middle Tennessee, which includes a "second chance" program that employs people previously convicted of felony criminal charges. Mr. Street also testified that his employees are subject to random drug testing as a condition of their employment. Roper also presented various exhibits, including an expungement order for a 2001 arrest and conviction, information about the H.U.G.G.S. program in which Roper is willing to participate and that provides treatment and skill-building wrap-around services, a parole certificate, Ms. Smith's declaration under penalty of perjury of her understanding of the responsibilities of a third-party custodian, character letters from Ms. Smith and Roper's brother, an offer of employment from Michael Street, and certificates of Roper's completion of CoreCivic's reentry program.

In their post-hearing briefing, both parties also relied on additional exhibits. Although it was not necessarily the Court's intention to leave open the proof, the Court will nevertheless consider the additional exhibits as appropriate. The government's additional exhibits are judgments of Roper's convictions from 2002, 2007 and 2008. (Docket Nos. 34-1 through -3.)[2]

---

[2] For the reasons discussed below, the Court will not consider the additional exhibits submitted by the government regarding the expunged charge. (Docket No. 38.)

3

Roper's additional exhibit is a letter from Project Return describing the additional wrap-around services they will provide if Roper is released. (Docket No. 35-1.

## Legal Standards and Analysis

Under the Bail Reform Act, 18 U.S.C. §§ 3142 *et seq.*, a court can order pretrial detention only after a hearing and only in certain eligible cases. 18 U.S.C. § 3142(f). *See also United States v. Salerno*, 481 U.S. 739 (1987) (upholding Bail Reform Act). A defendant may be detained pending trial only if a judicial officer "finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(f). "The default position of the law, therefore, is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). A finding of dangerousness must be supported by clear and convincing evidence. 18 U.S.C. § 3142(f); *Stone*, 608 F.3d at 945. When "risk of flight" is the basis for detention, the United States must satisfy a preponderance of the evidence standard. *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004).

In determining whether pretrial detention is appropriate, the factors the Court must consider are: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)–(4). In weighing the strength of the evidence, the Court may not modify or limit the defendant's presumption of innocence. 18 U.S.C. § 3142(j). The history and characteristics of a defendant within the meaning of the statute include "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal

4

history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). Also included is whether the defendant was on probation or parole at the time the offense was committed. 18 U.S.C. § 3142(g)(3)(B).

### **Nature and circumstances of offense charged**

For purposes of the Bail Reform Act, Congress thought it was especially significant if the nature and circumstances of the offense charged involve a firearm, which this offense does. *Stone*, 608 F.3d at 947; *see also* 18 U.S.C. § 3142(g)(1). That weights this factor in favor of detention. The other circumstances of the offense charged further weigh against release. According to Detective Ford's testimony, the MNPD received an anonymous tip that Roper, who apparently had outstanding warrants at the time, was in a particular vicinity. When dispatched officers arrived at the scene, they identified Roper and, after initially walking away, Roper surrendered and was placed under arrest. When the police officers patted down Roper, they discovered a loaded firearm in his waistband. Roper was arrested at approximately 3:15 in the afternoon and, according to Detective Ford's testimony, the incident occurred in a ballpark area where a crowd of people were congregated. Overall, this factor weights in favor of detention, although not overwhelmingly so.

### **Weight of evidence of dangerousness**

The weight of the evidence factor goes only to the likelihood that the defendant will pose a danger to the community or a risk of flight and not to the strength of the evidence of a defendant's guilt of the offenses charged. *Stone*, 608 F.3d at 948. At best, the weight of evidence of dangerousness here is neutral and at worst also weighs in favor of detention. Roper has an extensive criminal history, including for prior offenses involving firearms and involving violent conduct. In considering the § 3142(g) factors, a court may consider a defendant's prior charges, even if dismissed, although those will typically be given less weight than convictions. *See United*

5

*States v. Tolbert*, 2017 WL 6003075, at *5 (E.D. Tenn. Dec. 4, 2017) (citations omitted). "This is because the § 3142(g) analysis is concerned with a practical assessment of the defendant's dangerousness, rather than an adjudication of guilt for a particular offense." *Id.* As noted in *Tolbert*, evidence of the defendant's past or present wrongful conduct may be indicative of a defendant's dangerous tendencies. *Id.*

As recently as 2017, Roper was convicted of unlawfully possessing a firearm as a previously convicted felon. In connection with that case, a related charge of domestic assault with fear of bodily injury was retired for one year. In March of 2020, Roper was also charged with two counts of domestic assault with bodily injury for an incident occurring in April of 2019, which were later *nolle prossed*. Despite the ultimate disposition of these charges, the conduct described indicates that Roper has a history of violent conduct in his relationships with women. To mitigate against any potential danger, the Court imposes as a condition of Roper's release that he have no contact, either directly or indirectly, with the victim(s) of either incident, whose names shall be provided to Pretrial Services.[3]

The Court does not take lightly that Roper has prior convictions for serious crimes and has exhibited a pattern of probation (or community corrections) violations. It appears that Roper has been facing new charges or incarcerated for a good part of his adult life.[4] In another case with

---

[3] To the extent that this no-contact condition may interfere with Roper's communications with the mother(s) of his children, he may request a modification that would allow for some communication under strict conditions and, preferably, with supervision by his mother in whose third-party custody he will be placed.

[4] The Court also notes that there is at least one expunged charge from 2001, about which the parties provided supplemental briefing. The government has now requested that the Court disregard that charge, s*ee* Docket No. 30 at 2-3, which the Court will do, but not, as suggested by the government, for practical reasons. Rather, the Court finds that neither the expunged charge nor any of the underlying circumstances may be appropriately considered. *See* Docket No. 38. The cases relied upon by the government do not compel a different result. The *Pope* case did not

these same facts, the Court might well reach a different outcome. However, every detention determination is highly dependent on the specific facts and circumstances. Here, two primary distinctions in this case preclude a finding of dangerousness by clear and convincing evidence. First, Roper has an immediately available high-level trade job with an employer who has a very successful history of employing previously convicted felons. Additionally, Roper has taken the initiative to arrange for available wrap-around services through the H.U.G.G.S. program and Project Return. These circumstances, along with the willingness of Roper's mother to serve as a third-party custodian, mitigate against the weight of any dangerousness that Roper's release might otherwise pose.

### The history and characteristics of the defendant

This factor weighs strongly in favor of release. Although Roper has a lengthy criminal history, he has also completed modules to assist with a successful re-entry following incarceration. (Defense Exhibit 8.) He has also applied to and been accepted into H.U.G.G.S., which is a 12- to 16-week program that provides services to assist clients with functional skills, social skills, and

---

include any discussion of the propriety of the trial court's reliance on an expunged charge as a consideration for detention. *Pope v. United States*, 739 A.2d 819 (D.C. Ct. App. 1999). Further, that case appears to deal with detention in a non-federal criminal case, which, although there appears to be some similarity in language of the standards, provides little guidance in application of the Bail Reform Act factors. For similar reasons, the other case relied upon by the government, *Van v. Maricopa County Superior Court*, is also inapposite. 2020 WL 417572 (D. Ariz. Jan. 27, 2020). That was a habeas corpus case, one of the issues in which was the propriety of a state court judge's consideration of a "then-extant" but subsequently expunged conviction in reaching her decision to detain the defendant. *Id*. at *2. In contrast, the Court finds persuasive the cases relied upon by Roper. Those cases make clear that, under Tennessee law, which the Court finds controls the question of the effect of an expunged state charge, "[t]he effect of expunging the records of a criminal charge is to restore the person to the position he or she occupied prior to the arrest or charge." *State v. Sims*, 745 S.W.2d 191, 199 (Tenn. 1988). In other words, as if the arrest or charge never occurred. Considering the incident report of the arrest would defeat this purpose. For purposes of this case, the Court therefore gives no consideration to the expunged charge or any incident report of the underlying circumstances of that charge.

life skills, including weekly support group meetings and individual peer counseling. (Defense Exhibit 2.) Roper can also receive additional wrap-around services through Project Return. (Docket No. 35-1.) As noted, these resources fill the gaps that might otherwise convince the Court that Roper is unable or unwilling to remain in compliance with conditions of release.

Roper clearly has strong family bonds, as evidenced by the testimony of his mother, Mary Roper Smith, and the character letters submitted on his behalf, including the letter from his brother. (Defense Exhibit 5.) He is a lifelong resident of this community and is a certified journeyman electrician.

Additionally, Michael Street, the owner of S&D Electrical Services, testified that he has known Roper's family for 20 years, has previously employed Roper, and is aware of Roper's background. (Hearing Transcript, Docket No. 30 at p. 83, line 21 through p. 84, line 2 and p. 87, lines 1-7.) He further testified that he has a full-time job immediately available for Roper as a journeyman electrician earning $31 dollars per hour. (Hrg. Tr. at p. 85, line 10 through p. 86, line 17.)[5] Mr. Street also testified that his employees are subject to drug testing (Hrg. Tr. at p. 91, lines 6-14.) Additionally, Mr. Street described his involvement with a second chance program to employ convicted felons through the Central Labor Council of Middle Tennessee. (Hrg. Tr. at p. 87, lines 8-13.)

The Court is highly impressed with Mr. Street, including his familiarity with the dynamics of employing people who have prior felony convictions. Mr. Street has a very successful electrical contracting business. (Hrg. Tr. at p. 83, lines 7-20; p. 84, lines 7-13; p. 85, lines 3-9 and 17-25.) His successful business model includes employing people previously convicted of felonies, in

---

[5] Mr. Street testified that he can employ Roper seven days per week. (Hrg. Tr. at p. 86, lines 7-12.)

giving them, as he describes it, a second chance. (Hrg. Tr. at p. 87, lines 8- 25 and p. 88, lines 1-18.) But that second chance does not come easily. As Mr. Street testified, his employees must want to do better and be willing to show him that they are trying to better themselves. (Hrg. Tr. at p. 87, lines 15-25.) The employees are also subject to random drug tests and any positive test will result in termination, as will a refusal to submit to testing. (Hr. Tr. at p. 91, lines 6-14.) This evidence is a strongly weighted counterbalance to the concerns posed by Roper's release.

The Court also heard the testimony of Roper's mother, Mary Roper Smith, who indicated her willingness to be a third-party custodian for Roper. The Court does not find that Ms. Smith's lack of awareness of her son's prior criminal activity in and of itself makes her an unsuitable third-party custodian.[6] The Court believes Ms. Smith is sincere in her willingness to be a third-party custodian and that she understands the gravity of that undertaking.[7] Nevertheless, because it cannot be overstated, Ms. Smith is reminded that she is responsible for taking all reasonable measures to ensure that Roper complies with his conditions of release and that she is obligated to report to the Pretrial Services supervising officer if he fails to comply or disappears. If Ms. Smith does not do so, she is subject to contempt of court proceedings. This essentially places Ms. Smith back into a parental role, as a part of which she must be aware of Roper's conduct, what he is

---

[6] In fact, the Court would suppose that many parents of adult children are not fully aware of all the activities, legal or otherwise, in which those adult children may be involved.

[7] Ordinarily, when the Court releases a charged person into a third-party custodial situation, it is with an admonition to the charged person that they have now involved someone else in their legal issues and put that person in a position of possible legal jeopardy, because the third-party custodian can be subject to contempt proceedings if they fail to report any noncompliance by the charged person with conditions of release. When the third-party custodian is the parent of the charged person, the Court further reminds both the charged person and the third-party custodian that they are back in a parent-child relationship, where the third-party custodian has the legal obligation to be aware of the conduct of the charged person. Because the Court will not have a further hearing, the admonitions of this order will have to suffice.

9

doing, who he is with, whether he is in possession of contraband, etc. Ms. Smith cannot let her maternal instinct to trust Roper because he is a good son overwhelm her obligations as a third-party custodian to supervise his compliance with conditions of release and to report any noncompliance.

Roper's history of noncompliance with probation and community corrections is admittedly concerning, most especially because it is indicative of an unwillingness or inability on his part to comply with restrictions on his conduct. Nevertheless, the Court finds this consideration is mitigated by the strict conditions of release, including supervision by Pretrial Services and home confinement with monitoring, as well as the willingness of Mr. Street to employ Roper, the wrap-around services that Roper can access through H.U.G.G.S. and Project Return, and the third-party custodian appointment of Ms. Smith. Additionally, trial is currently set for May 11, 2021. If trial does not occur by that date, the Court intends to schedule periodic bond review hearings to evaluate Roper's compliance with conditions of release. Overall, this factor weighs heavily in favor of release.

**The nature and seriousness of the danger that would be posed by the defendant's release**

The Court recognizes the concern that Roper has unlawfully possessed firearms and that he has engaged in violent relationship conduct as described above. Without minimizing that conduct in any respect, the Court finds that the strict no-contact condition reasonably mitigates against similar conduct with those same individuals going forward. As to danger to the community at large, there is no evidence that, between 2007 and the instant incident in 2019, Roper had a firearm in the community.[8] This includes during events that resulted in the most serious drug

---

[8] The Court recognizes that for some of this period, Roper was incarcerated on a 2008 drug conviction.

10

charges and conviction in 2008. Considering all these circumstances, the Court finds this factor is either neutral or may tip slightly in favor of detention.

Overall, the strength and weight of the factors supporting release negate a finding by clear and convincing evidence that there are no conditions of release the Court can impose to reasonably assure the safety of the community. Nor does the preponderance of the evidence support a finding that the defendant is likely to flee or not appear in court as directed. Specifically, the Court finds that the following combination of conditions, in addition to the Court's standard conditions, will reasonably assure Roper's appearance and mitigate any risk of danger:[9]

- Roper shall report to Pretrial Services as directed;
- Roper will not obtain a passport or other international travel document;
- Roper's travel will be restricted to the Middle District of Tennessee unless other approved in advance;
- Roper must avoid all contact, directly or indirectly, with any witness or victim in the investigation or prosecution of this case;
- Roper must avoid all contact, directly or indirectly, with the women involved in the March 2017 incident and the April 2019 incident (as described on pages 5-6 and 7-8 of the Pretrial Services Report), whose names and current addresses (if known) must be provided to Pretrial Services;
- Roper must not possess a firearm, destructive device, or other weapon;
- Roper must not excessively consume alcohol;

---

[9] These conditions are set out in the full order of pretrial release entered separately by the Court.

- Roper must not use or unlawfully possess a narcotic drug unless prescribed by a licensed medical practitioner;
- Roper must submit to random drug testing;
- Roper must not obstruct or attempt to obstruct any drug test;
- Roper must participate in inpatient or outpatient substance abuse therapy and counseling if directed by Pretrial Services;
- Roper will report any contact with law enforcement to Pretrial Services and will allow Pretrial Serves to visit him at home or elsewhere and to confiscate any contraband observed in plain view;
- Roper will be in the third-party custody of his mother, Mary Roper Smith, in whose residence he must reside at all times;
- Roper will be on home detention, restricted to his residence at all times except for employment, religious services, treatment (medical, substance abuse, or mental health), attorney visits, court appearances, court-ordered obligations, or other activities approved in advance;
- Roper's location monitoring will be as directed by Pretrial Services;
- Roper must maintain employment with S&D Electrical Services and must provide his weekly work schedule (by location and time) in advance to Pretrial Services;
- Roper must complete the H.U.G.G.S. program, will follow and comply with all program requirements, and will provide confirmation of completion to Pretrial Services;
- Roper must participate in the available programs and services provided by Project Return and shall provide Pretrial Services with verification of his continued services support from Project Return.

**Conclusion**

For all these reasons, the United States' motion for detention is denied. This order shall be STAYED through 4:00 p.m. on April 5, 2021 to allow for the United States to file any motion for review under 18 U.S.C. § 3145 **and** obtain a further stay from the District Judge. Otherwise, Roper shall be released on April 6, 2021, promptly upon processing, as directed above and in the release order entered separately.[10]

Any party aggrieved by this order may seek review under 18 U.S.C. § 3145.

It is SO ORDERED.

_____
BARBARA D. HOLMES
United States Magistrate Judge

---

[10] Defense counsel should contact the U.S. Marshal with any questions about the logistics of Roper's release.